UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JASON FREEMAN,

              Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

DECISION & ORDER

18-CV-6008P

**PRELIMINARY STATEMENT**

        Plaintiff Jason Freeman ("Freeman") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 6).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 13). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity ["RFC"] to perform his past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     Freeman's Contentions

Freeman contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 10-1). First, he argues that the ALJ's physical RFC assessment was not supported by substantial evidence. (*Id.* at 9-19). According to Freeman, in conducting the physical RFC assessment, the ALJ improperly substituted her own lay opinion for that of "the undisputed medical opinion of [Freeman's] own treating physician" – Dr. Subodh Debnath. (*Id.* at 9-15). In addition, Freeman asserts that the ALJ failed to comply with the treating physician rule in discounting Debnath's medical opinion. (*Id.* at 15-17). Freeman also contends that the ALJ's physical RFC does not account for certain limitations opined by Debnath, including limitations concerning Freeman's work pace, attendance, and his need for a sit/stand option, and contradicts Debnath's opinions that Freeman cannot meet the demands of light work. (*Id.* at 17-19). Second, and relatedly, Freeman argues that the ALJ erred at step five of the sequential analysis because "the RFC does not properly account for [Freeman's] true limitations." (*Id.* at 19-20).

4

**III.     Analysis**

   **A.     RFC Assessment**

Freeman's challenge centers on the ALJ's decision to give "little weight" to the medical opinion of Freeman's primary care physician, Dr. Debnath ("Debnath"), which is the only medical opinion in the record. By discounting this opinion, Freeman argues, the ALJ "arbitrarily substituted" her own lay opinion for that of an "uncontradicted" competent medical opinion and violated the treating physician rule. (*Id.* at 9-17).

The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence. (Docket # 13-1 at 13-20). Specifically, the Commissioner asserts that the ALJ was entitled to weigh the record evidence and make a finding consistent with the record as a whole, regardless of whether the ALJ relied upon a medical opinion in the record. (*Id.* at 13). The Commissioner also argues that Debnath does not qualify as a treating physician under the relevant regulations and, even if he did, the ALJ properly discounted his medical opinion. (*Id.* at 15-17).

   **1.     The ALJ Substituted Her Own Lay Opinion in Formulating the RFC**

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities,

5

non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) (citation omitted). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in h[er] decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), "an ALJ is not a medical professional, and is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257 (W.D.N.Y. 2018) (quotations omitted) ("the ALJ may not interpret raw medical data in functional terms"). Accordingly, although the RFC determination is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," as a general rule, the Commissioner "may not make the connection [her]self." *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). Although under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment," *House v. Astrue*, 2013 WL 422058, *4 (N.D.N.Y. 2013) (internal quotation omitted), I conclude that those circumstances are not present here.

In this case, the ALJ determined at step two that Freeman had the severe impairments of "brachial plexus disorders, right shoulder pain, and obesity." (Tr. 12). The only opinion evidence in the record is a March 2016 "Questionnaire" completed by Debnath. (Tr. 515-16). In that report, Debnath indicated that he treated Freeman for brachial neuritis, shoulder pain, cervical disc disease, muscle atrophy, and gastroesophageal reflux disease. (Tr. 515). Debnath opined that these conditions would cause Freeman pain, fatigue, diminished concentration and work pace, the need to rest at work, and would result in Freeman being off-task for more than one-third of the day. (*Id.*). In Debnath's view, these conditions would be expected to cause Freeman good days and bad days, and the bad days would lead Freeman to be absent from work more than four days a month. (*Id.* at 515-16). Debnath also indicated that the medications taken by Freeman, including oxycodone, could cause fatigue, upset stomach, increased pain, and drowsiness. (*Id.* at 516).

In addition, Debnath opined that Freeman could sit for approximately thirty minutes out of an eight-hour day, should change positions between sitting and standing every twenty minutes, and could stand/walk for about one hour out of an eight-hour day. (*Id.*). Finally, Debnath opined that Freeman could occasionally – meaning "up to [one-third] of the [work]day" – lift zero to five pounds, five to ten pounds, and over ten pounds. (*Id.*).

In making her RFC assessment, the ALJ gave "little weight" to Debnath's opinion that Freeman was able to stand for only one hour in an eight-hour workday and only occasionally lift greater than ten pounds. (Tr. 15). According to the ALJ, Debnath "did not specify whether lifting limitations [were] particular to [Freeman's] right hand . . . [and] there [was] no basis for such an extreme standing limitation." (*Id.*). The ALJ did not mention the other limitations in Debnath's opinion.

7

The ALJ determined that Freeman could perform light work, provided the work could be done either "sitting or standing and would allow [Freeman] to alternate between the two positions without stopping work activity." (Tr. 13). Moreover, the ALJ limited Freeman to work that "does not require working above the shoulder level or lifting more than ten pounds with the dominant right hand." (*Id.*). In making this RFC determination, the ALJ summarized portions of the medical evidence and Freeman's hearing testimony and noted that Freeman could perform activities of daily living, such as bathing and dressing, mowing the lawn, helping wash the dishes, walking, using public transportation, and shopping. (Tr. 14-15). The ALJ acknowledged Freeman's complaints of right shoulder pain and, without citing any medical evidence, "limited [Freeman] to lifting or carrying not more than 10 pounds with [his] right dominant hand." (Tr. 15).

The Court agrees with Freeman that this RFC assessment is at odds with Debnath's March 2016 opinion. (Docket # 10-1 at 10-11). Specifically, although the RFC allows Freeman to alternate positions between sitting and standing, it does not account for Debnath's opinion that Freeman needs to rest during the workday. In addition, contrary to Debnath's opinion that Freeman could only occasionally lift or carry objects weighing up to ten pounds, the ALJ concluded that he could perform light work and thereby found that Freeman could frequently engage in such lifting. (Tr. 13, 516); *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). Moreover, the ALJ did not address Debnath's opinion that Freeman would be off-task for more than one-third of the workday and would be absent from work more than four days a month. (Tr. 515-16). As the vocational expert testified, these limitations would preclude competitive employment. (Tr. 59-62).

8

Apart from Debnath's opinion, the record does not contain a useful assessment from any medical source of Freeman's physical limitations. Indeed, the ALJ cites no contrary medical evidence in discounting Debnath's opinion; rather, she states, "[n]othing in [Freeman's] clinical signs suggest[ed] that the [RFC] assessment was unreasonable[, and the] medical record [does not] reflect a treatment regimen inconsistent with such limitations." (Tr. 15). This statement hardly explains the ALJ's reasons for discounting much of Debnath's opinion.

It is unclear how the ALJ arrived at her RFC determination and why she completely disregarded certain of the limitations assessed by Debnath, such as Freeman's need to rest at work, his work pace, and his potential to be absent from work because of his impairments. By rejecting Debnath's opinion, the ALJ improperly relied on her own lay interpretation of the medical evidence, and remand is warranted on this basis. *See*, *e.g.*, *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d at 260 ("in this case, the RFC finding is at odds with the only medical opinion of record regarding [p]laintiff's physical capabilities, and that leaves the [c]ourt at a loss as to how the ALJ assessed [p]laintiff's physical limitations[;] [t]he ALJ's failure to rely on sufficient evidence in assessing [p]laintiff's physical limitations requires remand"); *see also Lowe v. Colvin*, 2016 WL 624922, *7 (W.D.N.Y. 2016) ("[b]ecause [the treating physician] is the only medical opinion in the record to assess [p]laintiff's ability to lift and carry with specificity, and because the ALJ ultimately gave little evidentiary weight to that opinion, the [c]ourt is left with the circumstances of the ALJ interpreting raw medical data to arrive at a [RFC] determination, without the benefit of an expert medical opinion") (quotations omitted).

"In some circumstances, an ALJ may make an RFC finding without treating source opinion evidence." *Benman*, 350 F. Supp. 3d at 259 (citing *Muhammad v. Colvin*, 2017 WL 4837583, *4 (W.D.N.Y. 2017)). *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d

9

Cir. 2017) (where "the record contains sufficient evidence from which an ALJ can assess the claimant's [RFC], . . . a medical source statement or formal medical opinion is not necessarily required") (internal quotation and citations omitted). In those circumstances, however, "the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'" *Benman*, 350 F. Supp. 3d at 259 (quoting *Muhammad v. Colvin*, 2017 WL 4837583 at *4). In other words, an ALJ "may not interpret raw medical data in functional terms." *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711, *3 (W.D.N.Y. 2019) (internal quotations and citations omitted). Where the record lacks a "useful assessment" of the claimant's limitations, remand is appropriate. *See*, *e.g.*, *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711 at *3-4; *Benman*, 350 F. Supp. 3d at 260; *Smith v. Comm'r of Soc. Sec.*, 337 F. Supp. 3d 216, 226-27 (W.D.N.Y. 2018); *Kain v. Colvin*, 2017 WL 2059806, *4 (W.D.N.Y. 2017).

Here, although the record contains treatment notes, including some from specialists, those records generally contain bare medical findings and do not address or shed light on how Freeman's impairments affect his physical ability to perform work-related functions. For these reasons, the cases cited by the Commissioner (Docket # 13-1 at 14) are distinguishable from the instant case. *See*, *e.g.*, *Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) (ALJ did not improperly rely on his own lay judgment in determining RFC; although ALJ rejected certain medical source opinions, "[t]he ALJ relied upon the findings and conclusions of other treating physicians . . . , and numerous consulting physicians . . . in concluding that [plaintiff] had the capacity for simple sedentary work"); *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) ("because the record contained sufficient other evidence [besides a brief letter from plaintiff's physician] supporting the ALJ's determination and because the ALJ weighed all of

that evidence when making his [RFC] finding, there was no gap in the record and the ALJ did not rely on his own lay opinion") (internal quotation omitted). "Without some explanation from" the ALJ "as to the tether between her RFC" and the record evidence, "the RFC appears to be based upon her lay analysis of [Freeman's] limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, 2018 WL 5993366, *3 (W.D.N.Y. 2018).

"As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *See Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d at 912). Review of the record leads me to conclude that remand is appropriate to allow the ALJ to do so here.

### 2. **The ALJ Improperly Weighed Debnath's Medical Opinion**

Freeman also argues that the ALJ erred by failing to comply with the treating physician rule, specifically because she failed to provide "good reasons" for discounting Debnath's opinion. (Docket # 10-1 at 15-17). The Commissioner disputes that Debnath qualifies as a treating source because he only saw Freeman twice during the relevant period of disability and only a limited number of times prior to the alleged onset date, and he "did not really treat [Freeman] for his allegedly disabling impairments." (Docket # 13-1 at 15, 19).

Before discounting any medical opinion, an ALJ must consider:

(1) the frequency of examination and length, nature, and extent of the treatment relationship;

(2) the evidence in support of the physician's opinion;

(3) the consistency of the opinion with the record as a whole;

> (4) whether the opinion is from a specialist; and
>
> (5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider [the above-listed factors] to determine how much weight to give to the opinion"); *Andrew L. v. Berryhill*, 2019 WL 1081460, *4 (N.D.N.Y. 2019) ("[t]he factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant") (quotations omitted); *Benman*, 350 F. Supp. 3d at 258 ("before discounting any medical opinion, including those by consultative examiners, the ALJ must consider the [above-listed] factors"). As to treating physicians, the regulations also direct the ALJ to "give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32; *see also* 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2);[1] *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted).

The Court "offers no view as to whether [Debnath] is a treating physician under the applicable regulations or what weight should ultimately be accorded to his opinion." *Andrew*

---

[1] These regulations apply to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in C.F.R. §§ 404.1520c & 416.920c apply.

*L. v. Berryhill*, 2019 WL 1081460 at *5.  On remand, "[i]t is ultimately the ALJ's obligation to weigh the evidence and resolve conflicts in it, but in doing so the ALJ [should] provide 'a more comprehensive explanation than the one given here.'"  *Id.* (quoting *Marrese v. Colvin*, 2016 WL 5081481, *3 (W.D.N.Y. 2016)).  The ALJ's explanation should make clear whether she considers Debnath as a treating physician and should explain more fully the reasons for the weight, if any, she accords Debnath's opinion.

      B.      **<u>Remaining Contentions</u>**

In light of my determination that remand is warranted, I decline to address Freeman's remaining contentions related to the RFC determination and the ALJ's step five determination.  *See*, *e.g.*, *Benman*, 350 F. Supp. 3d at 260-61 (collecting cases); *see also Stein v. Colvin*, 2016 WL 7334760, *3 n.2 (W.D.N.Y. 2016) (remanding where RFC determination was not supported by substantial evidence because ALJ based RFC on raw medical evidence and his own lay opinion; "[plaintiff] advances other arguments that she believes require reversal of the Commissioner's decision[;] [h]owever, because this [c]ourt disposes of this matter on the improper RFC determination, those arguments need not be reached").

## **<u>CONCLUSION</u>**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings  **(Docket # 13)** is **DENIED**, and Freeman's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                      *s/Marian W. Payson*
                                                     MARIAN W. PAYSON
                                                United States Magistrate Judge

Dated:  Rochester, New York
         May 8, 2019